IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HEIDI KRISPIN,

                Plaintiff,

  v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.

OPINION AND ORDER

14-cv-658-wmc

      Invoking 42 U.S.C. § 405(g), plaintiff Heidi Krispin seeks judicial review of a final decision of defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, which denied her application for Social Security Disability Insurance Benefits and Supplemental Security Income. On May 27, 2016, the court heard oral argument on plaintiff's contentions that the administrative law judge ("ALJ") erred in the following respects: (1) failing to explain his finding that Krispin's impairments did not meet or medically equal the requirements for Listing 1.04 (disorders of the spine); (2) not properly considering Krispin's obesity in accordance with Social Security Ruling ("SSR") 02-1P, *Evaluation of Obesity*; and (3) without medical support or explanation, concluding a treating physician's opinion that Krispin could perform light work on a part-time basis is the equivalent of a residual functional capacity ("RFC") for full-time, sedentary work. While finding that the ALJ had articulated a sufficient basis for his decision with respect to Listing 1.04, the court will remand for further consideration of the treating physician's opinion and the impact of Krispin's obesity, as well as a more thorough explanation of their effects on her residual functional capacity.

BACKGROUND

## I. Relevant Work History

Krispin claims a disability onset date of July 1, 2008, based on low back and hip pain. She was 44 years old at the time of her alleged onset date and 47 years old when she applied for benefits. Krispin is a high school graduate with work experience as a food preparer and dishwasher at a restaurant. Between 2008 and 2012, Krispin worked 12 hours a week, and in January 2012, she reduced her work to 3.5 hours, two days per week, for a total of 7 hours a week. (AR 55-56.) Krispin stopped working altogether in January 2013. At the hearing before the ALJ on June 25, 2013, Krispin testified that she had been using a cane on a full-time basis since March 26, 2013, and that she had to change her position every 10 minutes. (AR 58-60.)

## II. Relevant Medical History

Krispin initially sought treatment at a clinic for lower back pain and abdominal cramping on July 29, 2008. (AR 410-11.) She saw Dr. Gill on August 6, 2008, and he noted that her x-rays showed severe facet osteoarthritis changes from L3-4 through L5-S1 and some evidence of degenerative spondylolisthesis. Gill prescribed a muscle relaxant, anti-inflammatories, stretching, use of heat and ice, and physical therapy. He also noted that Krispin was obese. (AR 407-10.)

On February 6, 2009, Dr. Gill diagnosed Krispin with degenerative spondylolisthesis at L4/5 and left L5 radiculopathy. He noted that a magenetic resonance imaging study ("MRI") taken on October 2008 revealed grade 1 spondylolisthesis at L4-5 with extensive facet hypertrophic changes resulting in moderate to severe central canal stenosis. As a result, Gill prescribed pain medications and referred Krispin to Dr. Benjamin Hackett, an orthopedic spine surgeon. (AR 400-02 and 676.)

2

Krispin saw Dr. Hackett on February 20, 2009, who noted that she was moderately obese and suffered from degenerative spondylolisthesis at L4/5, multi-level lumbar spondylosis at L3/4 and L5-S1, and L4-5 spinal stenosis. Dr. Hackett recommended core strengthening, spinal stabilization, and a nerve root block for Krispin. (AR 674-75.) Krispin saw Dr. Hackett again several months later, on August 14, 2009. At that time, Krispin reported that she was doing quite well after having a L-5 nerve block on the left side. (AR 672.)

On October 16, 2009, however, Krispin returned to Dr. Hackett, reporting that she was having increasing pain down her left leg. Hackett recommended an epidural steroid injection at L5-S1, as well as physical therapy. (AR 670-71.) Krispin next saw Hackett six months later, on April 30, 2010, when she reported that the steroid injections had given her excellent relief from the radicular symptoms, but that she was now experiencing low back pain, which was relieved by sitting. (AR 668-69.)

Krispin continued to report receiving significant relief from steroid injections throughout 2010. For example, on September 1, 2010, Dr. Hackett noted that Krispin was working without restrictions and doing fairly well with her radicular symptoms due to "excellent relief" from the steroid injections. (AR 666-67.) On December 15, 2010, Hackett again noted that Krispin had 100% pain relief since her steroid injection a week before. (AR 664.)

However, Krispin's condition again took a turn for the worse in the summer of 2011, when she began experiencing hip pain. In June 2011, Dr. Aylin Akay diagnosed her with trochanteric bursitis in her left hip for which she received oral steroid medication, as well as a steroid injection. (AR 346-62, 662.) Although Krispin reported to Dr. Hackett on July 20, 2011, that the injection relieved her symptoms temporarily, her radicular pain had increased.

3

In response, Hackett gave her a trochanteric bursa injection and recommended additional injections for her lumbar radiculopathy. (AR 661-62.) When Krispin reported on August 31, 2011 that she experienced only short-term relief from her latest injections, Hackett referred her to Dr. Scott Stuempfig for nonoperative pain management before considering spinal surgery. (AR 659-60.)

On September 27, 2011, Dr. Stuempfig noted that Krispin had 70% improvement in her pain symptoms after a steroid injection. In particular, Krispin reported being able to walk farther, stand longer, and being more successful at work. (AR 738-39.) Although Krispin complained of cramping and increased pain on October 4, 2011, Stuempfig further noted on November 8, 2011, she had experienced persistent improvement since her steroid injection. Still, she told Stuempfig that her back pain flared when she was at work and in the evenings.

During this period, Krispin was taking multiple medications, including gabapentin, meloxicam and tramadol. (AR 734-37.) In a progress note dated January 17, 2012, Stuempfig noted that Krispin reported being able to work for about 4 hours a day without "intolerable pain." (AR 732-33.)

The medical record also contains an RFC assessment form completed by Syd Foster, M.D., for the state and dated October 20, 2011, in which he noted her back, hip, and foot problems and obesity. (AR 697-704.) Based on his review of the medical record, he limited Krispin to light work. *Id.* The Disability Determination and Transmittal form that he completed on the same day states that she is not disabled. (AR 77-78.) Another state agency physician, Dr. Mina Khorshidi, completed a similar Disability Determination and Transmittal form on May 14, 2012, also finding Krispin not disabled. (AR 79-80.)

4

Critical to one of Krispin's challenges is a questionnaire that Dr. Stuempfig completed on March 6, 2012, which limited Krispin to light work of no more than 4 hours a day, with a specific standing limitation of 4 hours. He noted that the restrictions were implemented to help her succeed in work and should be reevaluated in eight weeks. (AR 730, 758.) Less than 6 weeks later, on April 17, 2012, Dr. Stuempfig noted that while the steroid injections resolved her radicular pain at least temporarily, they were not helping her lower back pain. Stuempfig ordered a new MRI of her lumbar spine because it looked like her L5 nerve root could be pinched and her L5-S1 neurofocaminal narrowing may be worsening. (AR 754.) Because she was still having pain over the sacrolliac joint and a flare up of her bursitis, Stuempfig also recommended in both May and July, 2012, that Krispin continue the part-time work restriction, her medications, and steroid injections. (AR 756 and 872.)

Although records from March 2013 indicate that Krispin received steroid injections that completely relieved her pain, the relief was short-lived. (AR 848-49.) Another set of injections in late March 2013 also provided only temporary relief. (AR 845-47 and 878-79.) On April 17, 2013, Dr. Benjamin Hackett noted that Krispin reported: (1) cramping in left lower extremity, buttocks and posterior thigh; (2) increased pain with prolonged standing and walking, which is relieved by sitting; and (3) some sitting intolerance related to degenerative disk disease. Krispin also told Hackett that she was barely holding on with epidural injections and a lot of help from her kids, although the cane she recently acquired provided a lot of benefit. Hackett discussed surgical options with Krispin, but she decided not to pursue them at that time because they carry "a lot of risk." (AR 876-77.)

### III.  ALJ Decision

The ALJ issued his decision on July 25, 2013, finding Krispin not disabled.  Although he found that Krispin was severely impaired by a back impairment, a hip impairment, and obesity, he determined that her impairments, alone or in combination, did not meet or equal any listed impairment.  Moreover, the ALJ determined that Krispin retained a RFC to perform limited sedentary work with occasional stooping, bending, crouching, crawling, kneeling, and climbing ramps or stairs; no climbing ropes, ladders, or scaffolds; and a sit/stand option with no sitting or standing for more than 30 minutes at a time.  (AR 22.)

In doing so, the ALJ expressly discounted Krispin's statements concerning her symptoms and limitations, explaining that:  (1) she has received only routine/conservative treatment (injections and physical therapy) that successfully managed her symptoms and pain; (2) some doctors stated there is no obvious source of her pain; (3) her medical examination findings were generally normal or unremarkable; (4) there were gaps in treatment after Krispin reported pain relief from treatment; (5) her daily activities are not as limited as one would expect (considering that she cares for 2 kids, shoveled snow, shops, travels, walks, cleans, works part-time as dishwasher and food preparer, etc.); (6) she has made statements about her lifting and carrying limitations that are inconsistent with what she lifts and carries at her part-time work; and (7) her demeanor at the hearing was inconsistent with a reported pain severity of 9 out of 10.  (AR 23-28.)

As for the seemingly conflicting medical opinions, the ALJ placed some weight on the state agency physicians' opinions but purported to reduce their proposed RFC assessments for Krispin from light to sedentary because Krispin was obese and had testified that sitting improves her symptoms.  (AR 28.)  At the same time, the ALJ gave little weight to Dr. Stuempfig's opinion as the treating physician, that Krispin could only perform part-time,

6

light work. The ALJ instead found that: (1) Stuempfig indicated the restrictions were temporary, but never reevaluated plaintiff within eight weeks, as he stated that he would; and (2) Sutempfig never considered whether Krispin could in fact perform less strenuous work for a longer period of time. (AR 28-29.)

OPINION

Generally speaking, the court finds the ALJ's opinion to be clear and well-reasoned, particularly with respect to Krispin's credibility. Even so, the ALJ should have addressed more thoroughly two of the three areas challenged by Krispin here. Specifically, the court finds no fault in the ALJ's decision with respect to the listing analysis, but the combination of his abbreviated discussions of Dr. Stuempfig's opinion and Krispin's obesity are grounds for remand.

I. Treating Physician Opinion

The court begins with the ALJ's inadequately explained rejection of the treating physician's opinion because that is grounds for remand all by itself. In March 2012, for seemingly good reasons, Krispin's treating physician, Dr. Stuempfig, limited Krispin to part-time light work of no more than four hours a day. Later, he renewed these limitations in May and July 2012. Nevertheless, the ALJ concluded that "the totality of the evidence indicates the claimant can perform sedentary work," including "the overall medical evidence (demonstrating improvement with the current treatment regimen and relatively unremarkable physical examinations) and Dr. Stuempfig's conclusion that the claimant could perform part-time light work, as well as the claimant's subjective complaints." (AR 29.) The ALJ further justified his conclusion because the RFC he adopted for Krispin was "not entirely inconsistent" with Dr. Stuempfig's opinion. (AR 28.)

7

As Krispin points out, this conclusion appears to turn on its head the well-settled rule that a treating physician's medical opinion is entitled to controlling weight if it is supported by objective medical evidence and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

Moreover, an ALJ's RFC assessment is of little import if the ALJ does not provide a sound explanation for rejecting a treating physician's opinion. *Roddy*, 705 F.3d at 636; *see also Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("The problem in this case is that the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor."). Here, the ALJ in particular offers no explanation or medical support for his translating the treating physician's limitation on Krispin to part-time light work into a full-time, albeit sedentary RFC. If anything, the opinion runs contrary since Dr. Stuempfig explained in his progress notes that Krispin could work only about four hours before her pain became intolerable. While the ALJ discounted Krispin's ongoing pain, because the medical notes state that Krispin enjoyed significant relief from steroid injections, the record also shows that her relief was becoming increasingly short-lived. Indeed, by April 2013, Krispin told Dr. Stuempfig that she was barely holding on.

Although the ALJ points to strong evidence that Krispin may not have been disabled during the earlier portion of the relevant period, which plaintiff claimed runs from July 1, 2008 to July 25, 2013, the ALJ failed to acknowledge what appears to be a deterioration in Krispin's condition toward the end of that period, when her treatments were becoming less effective. The ALJ further stated that he did not adopt Dr. Stuemfig's more restrictive limitations for Krispin because Stuemfig intended them to be temporary, and he did not revisit them after July 2012. This reasoning is both confusing and poorly developed. The

fact that Dr. Stuempfig initially intended Krispin's restrictions to be temporary and to help her succeed at work does not mean that they would not become permanent limitations, especially in light of the medical evidence showing that Krispin's treatments were becoming less effective.

The ALJ also criticized Dr. Stuempfig for not addressing whether Krispin could work full time in a sedentary position. However, there is no requirement that a treating physician offer an opinion as to all possible work scenarios for a claimant. On the contrary, if the ALJ had any questions regarding Dr. Stuempfig's opinion or wished him to address other issues, he should have contacted him to request further information. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal citations omitted) ("[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record," which includes "contacting treating physicians and medical sources to request additional records and information."); Hearings, Appeals, and Litigation Manual (HALLEX), CH. I-2-7, available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-7.html (discussing posthearing actions and development of evidence).

Accordingly, the court will remand this case for the ALJ's further consideration of Dr. Stuempfig's opinion, particularly in light of Krispin's deteriorating condition. The ALJ should take care to apply the standard set forth in 20 C.F.R. § 404.1527(c) with respect to treating physician opinions. Similarly, if Krispin's remaining condition is in doubt, then contacting Dr. Stuempfig would seem an appropriate step on remand. The court is not, however, remanding with any conclusion in mind, but rather with direction that the ALJ to explain fully his reasoning with respect to the conclusion he reaches and support it with substantial evidence in the record.

**II. Listing 1.04**

Krispin asserts that the following listing applies:

> Listing 1.04 Disorders of the Spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in §1.00B2b.

Krispin argues correctly that the ALJ failed to identify any listing he considered, and did not explain why he believed that her impairments did not meet or equal a listed impairment. *See Barnett v. Barnhart*, 381 F.3d 664, 669-70 (7th Cir. 2004) (finding the ALJ's "two sentence consideration of the Listing of Impairments [was] inadequate and warrants remand" where ALJ ignored significant medical history and did not consult medical expert regarding equivalency); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) ("failure to discuss or even cite to a listing, combined with an otherwise perfunctory analysis, may require remand"). *Scott v. Barnhart*, 297 F.3d 589, 596 (7th Cir. 2002) ("Without meaningful analysis from the ALJ regarding this evidence, the parties have been left to dispute before this court the significance of the different diagnoses in light of [the relevant listing.]").

As the Commissioner argues, however, even though the ALJ's discussion was cursory, he provided a lengthy analysis of the record in other sections of his decision. (Def's Resp. Br. (dkt. #12) 4). *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (RFC discussion provided necessary detail to review step three determination; not discounted simply because it appeared elsewhere in decision); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (court read ALJ's decision as whole and noted it would be a "needless formality" to have the

ALJ repeat substantially similar analyses at both steps three and five). In addition, the Commissioner correctly points out that any error the ALJ committed in failing to articulate his findings was harmless because as explained below, it was clear from the briefing and the hearing that Krispin has not and cannot meet her burden of establishing the listing criteria related to a compromised nerve root or an inability to ambulate effectively. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[A]dministrative error may be harmless."); *Skarbek*, 390 F.3d at 504 (error is harmless when it "would not affect the outcome of [the] case.").

Krispin admits that she does not have a compromised nerve root, but she asserts that her receipt of approximately 10 nerve block steroid injections is equivalent to the listing's requirement. However, Krispin cited no medical or legal authority in support of her equivalency argument, and she offered no further explanation for her position at the hearing. The medical opinions and progress notes document Krispin's pain, but they do not contain any findings regarding equivalence to the listing. *See Coleman v. Astrue*, 269 Fed. App'x 596, 603 (7th Cir. 2008) (claimant failed to prove that impairment satisfied listing because he cited only his own blanket assertion of that fact). The Seventh Circuit has held that an ALJ need not explain why an impairment did not meet or equal a listing where there is no evidence of that fact. *Ronning v. Colvin*, 555 Fed. App'x 619, 623 (7th Cir. 2014); *Scheck v. Barnhart*, 357 F.3d 697, 700–01 (7th Cir. 2004).

There also is no evidence that Krispin is unable to ambulate, as that term is described in the listings. Krispin cites Dr. Hackett's April 13, 2013 treatment note indicating that she recently had acquired a cane that was helping her walk. While the ALJ specifically noted this, he found no evidence that her doctors prescribed a cane or felt she needed one. (AR 27.) The listings define the inability to ambulate as "having insufficient lower extremity

11

functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2b (emphasis added). Even accepting Krispin's assertion that she needed a cane, therefore, it only limited the functioning of one of her arms and thus did not meet the criteria in the regulations.

Finally, two state agency physicians completed Disability Determination and Transmittal forms finding Krispin not disabled. Although the forms are cursory, the Seventh Circuit has made clear that they constitute substantial evidence that a claimant's impairments do not meet or equal the criteria of a listed impairment. *Scheck*, 357 F.3d at 700 (opinions of state-agency reviewing physicians on Disability Determination and Transmittal forms that claimant not disabled "conclusively establish" opinion on medical equivalence on which ALJ may rely). *See also* SSR 96-6p, 61 FR 34466-01 (signature of state agency medical consultant on Disability Determination and Transmittal Form "ensures that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence."). Accordingly, the court concludes that the ALJ's finding that Krispin did not meet or equal a listed impairment is supported by substantial evidence.

## III. Obesity

Finally, Krispin contends in a brief argument that the ALJ failed to account for her obesity in his listing analysis as required by Listing 1.00Q (adjudicators must consider additional and cumulative effects of obesity during all steps of sequential evaluation process) and Social Security Ruling 02-1P (an impairment in combination with obesity may meet or equal requirements of a listing). The Commissioner did not respond to this argument in its brief, apparently relying on its position that Krispin had not adduced medical evidence showing that any of her conditions, either alone or in combination, met or equaled Listing

1.04. The court agrees that the ALJ's listing analysis is correct because, regardless of Krispin's obesity, there is no medical opinion indicating that her condition was equivalent to having a compromised nerve root or that she had the requisite ambulatory limitations. SSR 02-1P, 2002 WL 34686281, at *6 (S.S.A. Sept. 12, 2002) ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments.").

However, SSR 02-1P requires that an ALJ consider a claimant's obesity in *all* steps of the sequential evaluation process. *Id.* at *3. At step four, "[a]n assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." At the hearing, the court expressed its concern that the ALJ had not given adequate consideration to the effects of Krispin's obesity, particularly in relation to Krispin's RFC and overall ability to work a full-time job.

The ALJ determined that Krispin was severely impaired by obesity and the record supports that finding. However, the ALJ failed to include any discussion in his opinion about whether Krispin's obesity contributed to her pain or interfered with her ability to work. The ALJ stated that he was reducing the state agency physician's recommendations for a light-level RFC for Krispin in part because of her obesity (AR 28), but he did not explain how he reached this conclusion or why he thought a sedentary RFC would best accommodate the symptoms that were caused or exacerbated by her obesity.

Because the court has decided to remand based on the ALJ's inadequate discussion of the treating physician's opinion, it also directs the ALJ to consider what effect, if any, Krispin's obesity has on her RFC and whether any additional problems that it may cause lends support to Dr. Stuempfig's opinion.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Heidi Krispin's application for disability benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 20th day of June, 2016.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge